IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

SHANNON M. TUSTIN,

         Plaintiff,

v.                                           Civil Action: 5:08-CV-111
                                           (Senior Judge Stamp)

MOTORISTS MUTUAL INSURANCE
COMPANY,

         Defendant.

## MEMORANDUM, OPINION, AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL

On January 15, 2009 came the above named Plaintiff, by Anthony I. Werner and Lester

C. Hess, Jr. and the above named Defendant, by Jason P. Pockl and Thomas E. Buck for an

evidentiary hearing and argument on Plaintiff Shannon M. Tustin's Motion to Compel.[1]

Testimony was not taken, and no other evidence was introduced.

## I. INTRODUCTION

A.    Background

Motorists Mutual Insurance Company, (hereinafter "Motorists"), issued to Plaintiff a

motor vehicle insurance policy which provided underinsured motorist coverage in the amount of

$100,000 per person, $300,000 per accident. This policy was in full force and effect on July 11,

2006. On or about that day, a collision occurred involving a motor vehicle owned and operated

by Terry L. Williamson and a motor vehicle owned and operated by Plaintiff. Plaintiff alleges

that the collision is solely the fault of Mr. Williamson. Mr. Williamson was insured by

---

[1] Doc. No. 31

1

Nationwide Mutual Insurance Company at the time of the collision. Nationwide acknowledged that Mr. Williamson was liable for causing the collision and offered its policy limits of $50,000. Motorists also confirmed that Mr. Williamson was solely responsible for the collision. Plaintiff alleges her claim associated with the collision exceeds $150,000 in monetary value. Plaintiff believes she is entitled to be paid $100,000 underinsured motorist bodily injury coverage applicable to Motorists' policy. Motorists rejected this demand and offered $20,000 to settle the underinsurance claim. In May 2008, Plaintiff filed suit in the Circuit Court of Ohio County alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and unfair claim settlement practices. The case was removed to this Court under the Court's diversity jurisdiction. Defendant responded with its Answer.

The parties engaged in discovery and a dispute arose.

B.    The Motion

Plaintiff's Motion to Compel[2]

C.    Decision

Plaintiff's Motion to Compel is **GRANTED IN PART AND DENIED IN PART** as hereinafter set forth.

## II.  FACTS

1.    On August 28, 2008, Plaintiff served its Discovery Requests upon the Defendant.

2.    On October 21, 2008, Judge Stamp entered an Agreed Order of Stipulation

---

[2] Doc. No. 31

allowing Motorists until October 29, 2008 to respond to Plaintiff's Discovery Requests.[3]

3.      Defendant hand-delivered to Plaintiff on October 30, 2008 its Answers and Responses to Plaintiff's Discovery Requests.

4.      Counsel conferred by telephone in November regarding Plaintiff's perceived deficiencies in Defendant's responses.

5.      On December 2, 2008, Judge Stamp entered an Agreed Order of Stipulation giving Plaintiff until December 29, 2008 to file a motion to compel answers and responses to her interrogatories and requests for production of documents and giving Motorists until December 19, 2009 to file supplemental answers and responses to Plaintiff's interrogatories and requests for production of documents.[4]

6.      On December 18, 2008, Defendant served Plaintiff with Defendant's First Supplemental Answers and Responses to Plaintiff's Discovery Requests.

7.      Thereafter, counsel conferred again by telephone regarding Plaintiff's contention that the supplemental answers and responses were still incomplete.

8.      Pursuant to the Scheduling Order, the deadline for completion of discovery in this action is August 3, 2009.[5]

9.Defendant has never answered any of the interrogatories under oath as required by Fed. R. Civ. P. 33(b)(3).

---

[3] Doc. No. 24

[4] Doc. No. 28

[5] Doc. No. 18

# III. PLAINTIFF'S MOTION TO COMPEL

A.      Contentions of the Parties

Plaintiff contends that she has attempted to confer with Defendant in an effort to secure the disclosures without Court action.  Plaintiff contends that the great majority of Defendant's responses were unresponsive or incomplete.  Specifically, Plaintiff cites L.R. Civ. P. 37.02 to support her position that "...an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond."  Plaintiff then outlines each individual Request for Production and Interrogatory she believes Defendant's response thereto is insufficient.  The Court will address each Request for Production and Interrogatory separately below.

Defendant responded by saying it has responded to discovery and continues to supplement timely.  Defendant outlines, in an itemized fashion, its various responses and supplemental responses to discovery.  Defendant also maintains that it has agreed to produce documents and supplement as information is obtained.  Defendant contends the motion to compel is merely compelling it to do what it is already doing.  Defendant contends the motion is frivolous and a waste of time.  Defendant then outlines each individual Request for Production and Interrogatory to which it believes its response is sufficient.

B.      The Standards

        1.      Discovery - Scope.  "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For

good cause, the court may order discovery of any matter relevant to the subject matter involved

in the action. Relevant information need not be admissible at the trial if the discovery appears

reasonably calculated to lead to the discovery of admissible evidence.  All discovery is subject to

the limitations imposed by Rule 26(b)(2)(i), (ii), and (iii)."  Fed. R. Civ. P. 26(b)(1).

       2.    <u>Discovery - Scope</u>.  A party "may obtain discovery regarding any matter, not

privileged, that is relevant to the claim or defense of any party."  Fed. R. Civ. P. 26(b)(1).  In

addition, "the discovery rules are given 'a broad and liberal treatment.'"  <u>Nat'l Union Fire Ins.</u>

<u>Co. of Pittsburgh, P.A. v. Murray Sheet Metal Co. Inc.</u>, 967 F.2d 980, 983 (4th Cir. 1992)

(quoting <u>Hickman v. Taylor</u>, 329 U.S. 495, 507 (1947)).  However, the discovery sought must be

relevant.  Fed. R. Civ. P. 26(b)(1); <u>see</u> <u>also</u> <u>St. Bernard Sav. and Loan Ass'n v. Levet</u>, Civ. A.

No. 91-4493, 1993 WL 386321, at *1 (E.D. La. Sept. 16, 1993) (stating that "the Rule 26

requirement that material sought in discovery be relevant should be firmly applied and courts

should exercise appropriate control over the discovery process").[6]

       3.    <u>Discovery - Relevancy</u>.  A court must strike a balance between the broad scope of

the rules of discovery and the discovery of relevant evidence that is ultimately deemed

admissible or inadmissible at trial.  The test for relevancy under the discovery rules is

necessarily broader than the test for relevancy under Rule 402 of the Federal Rules of Evidence.

Fed. R. Civ. P. 26(b)(1) ("relevant information need not be admissible at the trial if the discovery

appears reasonably calculated to lead to the discovery of admissible evidence.").  In striking the

appropriate balance between these two tensions, "[d]istrict courts enjoy nearly unfettered

---

[6] This court recognizes the United States Court of Appeals for the Fourth Circuit
disfavors citation to unpublished opinions.  It recognizes the reasons for this and acknowledges
them.

discretion to control the timing and scope of discovery and impose sanctions for failures to comply with its discovery orders."  Hinkle v. City of Clarksburg, West Virginia, 81 F.3d 416, 426 (4th Cir. 1996) (citations omitted).

4.      Discovery - Interrogatories.  Federal Rule of Civil Procedure 33 governs interrogatories.  It states that "Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable."

5.      Discovery - Interrogatories and Time to Respond.  Federal Rule of Civil Procedure 33(b)(2) governs time to respond.  It states that "The responding party must serve its answers and any objections within 30 days after being served with the interrogatories.  A shorter or longer time may be stipulated to under Rule 29 or be ordered by the court."

6.      Discovery - Objections to Interrogatories.  All objections must be stated with specificity and any objection not raised is waived.  Fed. R. Civ. P. 33(b)(4).  "Mere recitation of familiar litany that interrogatory is 'overly broad, burdensome, oppressive, and irrelevant'" does not suffice as specific objection. Momah, v. Albert Einstein Medical Center, 164 F.R.D. 412, 417  (E.D. Pa. 1996) (quoting Josephs v. Harris Corp., 677 F.2d 985, 992 (3d Cir. 1982)).

7.      Discovery - Motion to Compel.  Motions to compel responses to interrogatories and requests for production are governed by Federal Rule of Civil Procedure 37(a)(2)(B).  This Rule provides that if a party declines to answer an interrogatory or request for production, the serving party "may move for an order compelling an answer, or a designation, or an order compelling inspection in accordance with the request."  Id.

8.      Discovery - Motion to Compel - Burden of Proof.  The party opposing a motion

to compel bears the burden of showing why it should not be granted.  <u>Roesberg v. Johns-Manville Corp.</u>, 85 F.R.D. 292, 296-97 (E.D. Pa. 1980); <u>Rogers v. Tri-State Materials Corp.</u>, 51 F.R.D. 234, 247 (N.D. W. Va. 1970).

9.  <u>Discovery - Duty to Respond Fully and Completely - No Gamesmanship</u>:  Parties must respond truthfully, fully and completely to discovery or explain truthfully, fully and completely why they cannot respond.  Gamesmanship to evade answering as required is not allowed.  <u>Hansel v. Shell Oil Corporation</u>, 169 F.R.D. 303 (E.D. Pa. 1996).

10.  <u>Sanctions - Fourth Circuit Four Part Test:</u>  Four factors must be considered in determining what sanctions to impose:  "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective."  <u>Southern States Rack & Fixture, Inc. v. Sherwin-Williams Co.</u>, 318 F.3d 592, 597 (4th Cir. 2003)(quoting <u>Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians</u>, 155 F.3d 500, 504 (4th Cir. 1998)).

11.  <u>Sanctions - When Not Appropriate:</u> Sanctions are not appropriate "When it has been established that failure to comply has been due to inability, and not wilfulness, bad faith, or any fault of the non-complying party."  <u>Wilson v. Volkswagon of Am.</u>, 561 F.2d 494, 503 (4th Cir. 1997).

12.  <u>Discovery - Limits - Claims of Privilege</u>.  A claim of privilege must be express and the nature of the communication, document or thing described with particularity.  Fed. R. Civ. P. 26 (b)(5).  The 1993 advisory committee notes to Rule 26(b)(5) state this section requires notification to other parties that a claim of privilege is being made.  The advisory committee

notes provide that withholding of material without notice is contrary to the rule, subjects the party to sanctions and may be viewed as a waiver.  Rule 26.04(2) of the Local Rules of Civil Procedure provides detailed requirements for claims of privilege.

13.     Discovery - Claims of Privilege - Waiver.  The advisory committee notes to Rule 26(b)(5)  of the Federal Rules of Civil Procedure make clear that failure to comply with the rule may constitute a waiver of privilege.  When a party files a boiler plate objection, refuses to comply with the rule and the Court finds the request is not patently improper, finding waiver of privilege is appropriate.  Pham v. Hartford Fire Ins. Co., 193 F.R.D. 659, 662 (D. Colo. 2000).

14.     Discovery - Duty to Supplement.  Once the discovery process has commenced, a party has "a duty seasonably to amend a prior response to an interrogatory, request for production, or request for admission if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(2).

15.     Discovery - Work Product.  "Subject to the provisions of subdivision (b)(4) of this

rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by

other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." Fed. R. Civ. P. 26(b)(3).

16. <u>Work Product Doctrine - Applicable Law</u>. In "diversity cases, unlike the attorney client privilege, federal common law and the federal rules govern the application of the work product doctrine." <u>Bradley v. Sunbeam Corp.</u>, 2003 U.S. Dist. LEXIS 14451 *4 (N.D. W. Va. August 4, 2003); <u>Baker v. Gen. Motors Corp.</u>, 209 F.3d 1051, 1053 (8th Cir. 1999) (en banc). <u>Pyramid Controls, Inc. v. Siemens Indus. Automations</u>, 176 F.R.D. 269 (N.D. Ill. 1997).

17. <u>Work Product Doctrine - Fact Work Product</u>. "Fact work product consists of documents and tangible things . . . prepared in anticipation of litigation." <u>U.S. v. Pepper's Steel and Alloys, Inc.</u>, 132 F.R.D. 695, 698 (S.D. Fl. 1990). "Fact work product may be obtained upon showing both a substantial need and inability to secure the substantial equivalent of the materials without undue hardship." <u>*In re* Grand Jury Proceedings</u>, 102 F.3d 748, 750 (4th Cir. 1996). Factual work product, includes "everything other than the mental impressions, conclusions, opinions, or legal theories of the attorneys." <u>*In re* Air Crash Disaster At Sioux City, Iowa On July 19, 1989</u>, 133 F.R.D. 315, 320. (N.D. Ill.1990).

18. <u>Work Product Doctrine - Fact Work Product</u>. "Under Rule 26(b)(3), factual work product, unlike mental impressions, is discoverable upon a showing that (a) the party seeking discovery has a substantial need of the materials in preparation of his case; *and* (b) he is unable without undue hardship to obtain the substantial equivalent by other means." <u>U.S. ex rel. Stone</u>

v. Rockwell Intern. Corp., 144 F.R.D. 396. (D. Col. 1992) (emphasis added). In showing a substantial need, the movant must specifically articulate the necessity for the documents or other tangible things. See Delco Wire & Cable, Inc. v. Weinberger, 109 F.R.D. 680, 689-690 (E.D. Pa. 1986). (holding that the movant is "required to show a need for specific documents or information at issue"). The movant must also demonstrate why or how alternative sources for obtaining the substantial equivalent are unavailable. In re Grand Jury Subpoena Dated Nov. 8, 1979, 622 F.2d 933, 935 (6th Cir. 1980) (noting that "[w]hen a party does not make any showing that other witnesses were unknown to it or unavailable to testify, it is merely 'on a general fishing expedition' into the attorney's files to satisfy itself that nothing has been overlooked. The work-product protection forbids such excursions") (citations omitted).

19. <u>Work Product Doctrine - Opinion Work Product</u>. Opinion work product consists of "mental impressions, conclusions, and opinions, or legal theories of an attorney or other representative of a party concerning litigation." Pepper's Steel and Alloys, Inc, 132 F.R.D. at 698. Opinion work product "can be raised by both the client and attorney and is more scrupulously protected as it represents the actual thoughts and impressions of the attorney." In re Grand Jury Proceedings, 102 F.3d at 750. The Supreme Court held that "[w]hile we are not prepared at this juncture to say that such material is always protected by the work-product rule, we think a far stronger showing of necessity and unavailability...would be necessary to compel disclosure." Upjohn Co. v. U.S. 449 U.S. 383, 401-02 (1983). Furthermore, the Court held that "such work product cannot be disclosed simply on a showing of substantial need or an inability to obtain the equivalent without undue hardship." Id. at 382. See also In re Martin Marietta Corp., 856 F.2d 619, 626 (4th Cir. 1988) (holding that "[w]e think *generally* such opinion work

product is not subject to discovery) (emphasis in original); <u>Fed. Election Comm'n v. Christian Coalition</u>, 178 F.R.D. 456, 464 (E.D. Va. 1998). (stating that an attorney's opinions about the merits of a case are protected from compelled disclosure.).

20.    <u>Discovery - Work Product Doctrine - Insurance Claim Files</u>.  Because an insurance company is in the business of investigating claims, investigatory files are normally prepared in the ordinary course of the insurance company's business although the files were prepared with an eye toward reasonably foreseeable litigation.  <u>Kidwiler v. Progressive Paloverde Ins. Co.</u>, 192 F.R.D. 536, 541 (N.D. W. Va. 2000); <u>Video Warehouse of Huntington, Inc. v. Boston Old Colony Ins. Co.</u>, 160 F.R.D. 83, 85 (S.D. W. Va. 1994); <u>State Farm Fire and Cas. Co. v. Perrigan</u>, 102 F.R.D. 235, 237 (W.D. Va. 1984).

C.    <u>Discussion</u>

The Court will address Plaintiff's specific arguments in the order in which they were raised:

<u>Request for Production No. 1</u>

Plaintiff requested all insurance policies covering Plaintiff's extra-contractual claims against Motorists.  Defendant produced documents relating to the Motorists policy issued to Plaintiff, providing her with underinsured motorists coverage.  Plaintiff argues that it has been four months and Defendant should know whether it is insured.  Defendant produced nothing regarding coverage for extra-contractual claims.  Defendant claims coverage for the extra-contractual claims has not been confirmed and if such a policy is found to exist, it will be produced.

The Court finds that Defendant's response, after four months, is unreasonable. Defendant is ordered to produce any insurance policies covering Plaintiff's extra-contractual claims, or disclose that no insurance policies exist within eleven (11) days of the date of this Order.

Request for Production No. 2

Plaintiff argues that Defendant's response to Request No. 2, generally seeking the Motorists claim file, is accompanied by a Privilege Log that is not in compliance with Court Rules. Defendant produced 654 pages of what it contends is the entire claims file. However, two pages, 571 and 572, were not produced and are claimed to be privileged. Page 571 is described as a "Fax Cover Page" and page 572 is described as "Fax Correspondence." The nature of the privilege in each instance is identified as "Confidentiality." Defendant contends that it should not be compelled to produce what it has already produced or already promised to be produced.

The party asserting privilege bears the burden of showing why documents otherwise subject to discovery should not be disclosed. Kidwiler v. Progressive Paloverde Ins. Co., 192 F.R.D. 536, 542 (N.D. W. Va. 2000). The party must specifically demonstrate how the privilege applies and cannot rely on the court to make arguments for it. Id. at 542 n. 33.

Rule 26(b)(5) states that when a party makes a claim of privilege, he must "describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection." The Local Rules require more specific information to be disclosed. Local Rule 26.04(a)(2)(A)(i) states that a party claiming privilege

must "identify the nature of the privilege (including work product) which is being claimed and, if the privilege is governed by state law, indicate the state's privilege rule being invoked and certify the attorney had reviewed each document for which privilege is asserted." The Local Rules go on to state that when privilege is claimed regarding a document, the party asserting privilege must state "the type of the document," the document's subject matter, the date the document was made, and any other information necessary to identify the document in a subpoena. L.R. Civ. P. 26.04(a)(2)(A)(ii)(I).

The Court finds that Defendant's Privilege Log is insufficient. Furthermore, even assuming *arguendo* that the documents identified in Defendant's Privilege Log are confidential, that is not a basis to exempt them from discovery in this action. There is no privilege for confidential communications between the parties to these communications. Defendant is ordered to disclose pages 571 and 572, as well as the entire claim file, within eleven (11) days of the date of this Order.

### Request for Production No. 3

Plaintiff asks Motorists to produce manuals or other resources used or relied upon in the handling of this claim. Defendant has produced a copy of one claims manual, but Plaintiff is concerned there might be more information out there to which she is entitled to. Defendant contends it has produced several documents consisting of medical records used to handle this claim, correspondence between Motorists and other parties used to handle this claim, a copy of the insurance policy issued to the Plaintiff used to handle this claim, cancelled checks and log notes used to handle this claim, a copy of the West Virginia Uniform Traffic Crash Report used to handle this claim, the ISO Claims match report used to handle this claim and the Automobile

13

Loss Notice used to handle this claim. Defendant further avers that it supplemented its initial response with a copy of the claims handling manual used to handle this claim.

The Court finds that Defendant has produced one claims manual responsive to Plaintiff's request. The Court orders Defendant to produce all other claims manuals, practices, and/or company procedures that were applicable to this claim within eleven (11) days of the date of this Order, or to affirmatively state none exist.

<u>Request for Production No. 4</u>

Plaintiff requests that Defendant produce all claims manuals, directives or other rules relating to the handling of underinsured motorist bodily injury claims from 2003 to the present. Defendant has produced only the claims manual in effect at the time of the collision and argues that claims manuals from prior years is irrelevant and would be inadmissible at trial.

The Court disagrees with Defendant's assertion that the information sought in Request for Production No. 4 is irrelevant. It has been repeatedly held that the "discovery rules are to be accorded a broad and liberal treatment." <u>Hickman v. Taylor</u>, 329 U.S. 495, 507, 67 S. Ct. 385, 392, 91 L. Ed. 451, 460 (1947). However, the discovery sought must be relevant. Fed. R. Civ. P. 26(b)(1); <u>see also</u> <u>Herbert v. Lando</u>, 441 U.S. 153, 177, 99 S. Ct. 1635, 1649 60 L. Ed. 2d 115, 134 (1979) (stating that "the requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied"). A court must strike a balance between the broad scope of the rules of discovery and the discovery of relevant evidence that is ultimately deemed admissible or inadmissible at trial. The test for relevancy under the discovery rules is necessarily broader than the test for relevancy under Rule 402 of the Federal Rules of Evidence. Fed. R. Civ. P. 26(b)(1) ("relevant information need not be admissible at the trial if the discovery

appears reasonably calculated to lead to the discovery of admissible evidence."). In striking the appropriate balance between these two tensions, "[d]istrict courts enjoy nearly unfettered discretion to control the timing and scope of discovery and impose sanctions for failures to comply with its discovery orders." <u>Hinkle v. City of Clarksburg,</u> 81 F.3d 416, 426 (4th Cir. 1996) (citations omitted).

While the information sought here may not be admissible at trial, the Court finds that it might lead to the discovery of admissible evidence. Therefore, Defendant is ordered to produce all claims manuals, directives or other rules relating to the handling of underinsured motorist bodily injury claims from 2003 to the present within eleven (11) days of the date of this Order.

<u>Request for Production Nos. 9, 10 and 11</u>

Plaintiff asks for written complaints about Motorists for the years 2003 to the present. Plaintiff asserts that W. Va. Code requires companies such as Motorists to keep records of such information. Defendant produced a nine page list of complaints filed against Motorists by its own insureds from 2005 through 2007 in all states. Defendant failed to identify what any of the complaints were about.

Defendant asserts that it has no procedure in place to track complaints made in West Virginia. The Court finds this may be in violation of W. Va. Code §33-11-4-10 and § 33-2-9. W. Va. Code § 33-11-4-10 provides:

> (10) *Failure to maintain complaint handling procedures.* -- No insurer shall fail to maintain a complete record of all the complaints which it has received since the date of its last examination under section nine, article two of this chapter. This record shall indicate the total number of complaints, their classification by line of insurance, the nature of each complaint, the disposition of these complaints, and the time it took to process each complaint. For purposes of this subsection,

15

"complaint" shall mean any written communication primarily expressing a
grievance.

W. Va. Code § 33-2-9(d) provides that the Commissioner of Insurance shall, at a

minimum,  "conduct an examination of every foreign or alien insurer licensed in this state not

less frequently than once every five years."   Defendant is ordered to respond Plaintiff's requests

as outlined in her Request for Production of Documents Nos. 9-11 in accordance with W. Va.

Code § 33-11-4-10 for the five years prior to the denial of the claim.  If Motorists has not

maintained this information as required, Defendant is ordered to respond in writing that it has no

record of the requested information.  Defendant has eleven (11) days from the date of this Order

to respond.

## Request for Production No. 12

Plaintiff asks for all documents evidencing any sanctions, suspensions, files or other

corrective action recommended by any regulatory agency.  Defendant contends it cannot respond

because it does not maintain a system to track all sanctions, fines or other corrective action.

Plaintiff again asserts that Defendant is in violation of West Virginia law by not maintaining

such a tracking system.

The Court does not agree with Plaintiff's assertion that Motorists is in violation of West

Virginia law here.  However, the Court orders Defendant to produce all documents evidencing

any sanctions, suspensions, files or other corrective action recommended by any regulatory

agency from 2003 to the present, or in the alternative, disclose that it has no such documents

within eleven (11) days of the date of this Order.

## Request for Production No. 13

Plaintiff requests minutes, memoranda, policies, procedure and any other writings which in any way reference Motorists actions or responses following a punitive damages verdict and/or judgment against Motorists from 2003 to the present. Defendant claims the response will be provided, if it exists, when it is received.

Defendant shall produce the documents responsive to Plaintiff's request within eleven (11) days of the date of this Order, or in the alternative, if no punitive damages or judgment has been entered against Motorists since 2003, Defendant must disclose this to Plaintiff.

Request for Production No. 14

Plaintiff asks for the production of all writings, documents, memoranda, recordings, computer databases or computer programs which in any way comprise and/or reference the indexing or grouping of bad faith claims, bad faith lawsuits and/or bad faith administrative actions brought against Defendant since 2003. Defendant's response was a familiar one. Defendant claims if it exists it will be produced.

Defendant is ordered to produce, within eleven (11) days of the date of this Order, any information it has regarding only 1st party bad-faith claims brought against it since 2003. If Defendant does not have any such information, or if no such claims have been brought against it, it is ordered to state this in writing and under oath.

Request for Production No. 15

Plaintiff requests all documents Defendant plans to offer in evidence at trial, or which are relevant to the subject matter involved in this action, including those related to any affirmative defenses. Defendant agrees to comply with the scheduling order regarding trial exhibits. Defendant has produced at least 2,000 documents that are potentially relevant in this case.

A valid scheduling order controls the litigation until modified. Fed. R. Civ. P. 16(e). "Disregard of the order would undermine the court's ability to control its docket, disrupt the agreed-upon course of the litigation, and reward the indolent and the cavalier." Johnson v. Mammoth Recreations, 975 F.2d 604, 610 (9th Cir. 2002). However, "[a] lawsuit is not a sporting event, and discovery is founded upon the policy that the search for truth should be aided." Tiedman v. American Pigment Corporation, 253 F.2d 803, 808 (4th Cir. 1958). Defendant is apparently using the scheduling order as a tool for delaying the production of discoverable material requested by Plaintiff. Defendant may not simply produce stacks upon stacks of documents, some of which it plans on using at trial. The Court finds Plaintiff's Request for Production No. 15 regarding relevant documents to be general in nature, but Defendant still has a duty to specifically indicate to Plaintiff which specific documents it knows at this time it plans to use at trial. Defendant has shall respond to this request within eleven (11) days of the date of this Order. As the litigation progresses, Defendant has a duty to continue to supplement its response with documents it intends to use at trial.

Request for Production No. 17

Plaintiff requests an organizational chart or diagram. Even after four months, Defendant has yet to produce an organizational chart. Defendant objected generally in his discovery response. At the hearing, Defendant's counsel stated he was told by representatives at Motorists that an organizational chart does not exist.

"General objections are not useful to the court ruling on a discovery motion," and a bare objection does not meet the standard for a successful objection. Chubb Integrated Sys. Ltd. v. Nat'l Bank of Wash., 103 F.R.D. 52, 58 (D.D.C. 1984). Moreover, failure to make "specific

18

legitimate objections to particular interrogatories [or requests for production] within the time allowed" may result in a court deeming any objections waived.  Pulsecard, 168 F.R.D. at 304 (quoting Casson Constr. Co. v. Armco Steel Corp., 91 F.R.D. 376, 379 (D. Kan. 1980)).

It is well established from the published precedent of this district that general objections are impermissible.  Fisher v. Baltimore Life Ins. Co., 235 F.R.D. 617, 622 (N.D. W. Va. 2006). This appears to be the clear holding of most courts.  For instance, in Joseph v. Harris Corp, 677 F.2d 985, 992 (3d Cir. 1982), the court stated that "the mere statement by a party that the interrogatory was 'overly broad, burdensome, oppressive or irrelevant' is not adequate to voice a successful objection to an interrogatory."  The Fifth Circuit held likewise in McLeod, Alexander, Powell & Apffel, P.C. v. Quarles, 894 F.2d 1482, 1485 (5th Cir. 1990).  Many other district courts have reached this holding so the matter is beyond serious dispute.  See, e.g., A. Farber & Partners v. Garber, 234 F.R.D. 186, 188 (C.D. Cal. 2006); Lamoureux v. Genesis Pharm. Servs., 226 F.R.D. 154, 158 (D. Conn. 2004); St. Paul Reins. Co., Ltd. v. Commercial Fin. Corp., 198 F.R.D. 508, 511-12 (N.D. Iowa 2000); Burns v. Imagine Films Entmt., 164 F.R.D. 589, 592-93 (W.D.N.Y. 1996); Cont'l Ill. Nat'l Bank & Trust Co. v. Caton, 136 F.R.D. 682, 685 (D. Kan. 1991); Roesberg v. Johns-Manville Corp, 85 F.R.D. 292, 296-97 (E.D. Pa. 1980).[7]

Yet some courts have also held that while general objections are normally impermissible they do suffice where a discovery request is manifestly over broad, unduly burdensome, or

---

[7] Although much of the case law refers specifically to either interrogatories or requests for production, where both types of discovery requests are at issue, as in this case, there is no reason to distinguish the standards governing responses to interrogatories from those governing responses to production requests because both Rules 33 and 34 require that objections be stated with specificity.  See McLeod, 894 F.2d at 1486; Pulsecard, 168 F.R.D. at 303.

irrelevant. In <u>Wagner v. Dryvit Systems</u>, 208 F.R.D. 606, 610 (D. Nev. 2001), the court stated

that while a party normally must make specific objections to discovery requests, this is not the

case where "it is obvious from the wording of the request...that discovery is overly broad and

unduly burdensome." Similarly, in <u>DIRECTV, Inc. v. Puccinelli</u>, 224 F.R.D. 677, 688 (D. Kan.

2004), the court stated that while a party opposing discovery normally has the burden of showing

why discovery is inappropriate, the burden shifts where "the request is overly broad and unduly

burdensome on its face." <u>See also</u> <u>Hammond v. Lowe's Home Ctrs., Inc.</u>, 216 F.R.D. 666, 671-

72 (D. Kan. 2003). The court in <u>Alexander v. FBI</u>, 186 F.R.D. 21, 40 (D.D.C. 1998), stated that

"[t]his request is facially over broad...Begala is not required to provide plaintiffs with additional

responses to this request for this reason." Finally, the court in <u>Stephens v. City of Chicago</u>, 203

F.R.D. 353, 361 (N.D. Ill. 2001), held that an interrogatory was "objectionable because it is

onerous and unduly burdensome on its face."

The Court finds that Plaintiff's Request For Production No. 17 could lead to the

discovery of admissible evidence. The Court finds it difficult to believe that a company the size

of Motorists does not maintain an organizational chart; however, Defendant is ordered to

respond to this request in writing by stating, with specificity, if this is the case. Otherwise,

Defendant is ordered to produce an organizational chart within eleven (11) days of the date of

this order.

<u>Request for Production No. 19</u>

Plaintiff requests all documents relating to each credible defense and all documents

relating to the and all investigative activities that led to and/or the circumstances of the

discovery. Defendant objected generally and led Plaintiff to its response to Request for

Procuction No. 2 as well as referenced the West Virginia Uniform Traffic Crash Report. Defendant's counsel believes the Motion to Compel is "absurd" because counsel has produced what it has received from Motorists.

Defendant is ordered to outline its defenses to liability in the underlying automobile accident, or in the alternative, confirm that it can produce no specific documentation in addition to the police report within eleven (11) days of the date of this Order.

INTERROGATORIES

The Court notes at the outset, before addressing each interrogatory at issue individually, that Defendant has failed to respond to any of Plaintiff's interrogatories because it has not provided a verification of the responses. Fed. R. Civ. P. 33(b) governs answers and objections to interrogatories. The rule provides that interrogatories served upon a corporate party must be answered "by any officer or agent, who must furnish the information available to the party." Fed. R. Civ. P. 33(b)(1)(B). "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). To verify the truthfulness of the answers, "[t]he person who makes the answers must sign them." Fed. R. Civ. P 33(b)(5). The Court in State Farm Mut. Auto. Ins. Co. v. Lincow, 2008 WL 697252, p. 5 (E.D. Pa. Mar. 10 2008) required the defendants to provide "a verification stating that to the best of his or her knowledge, information, and belief, the answers provided are true and correct."

Because Defendant has not responded to the interrogatories in a timely fashion, all objections are waived. Pursuant to Fed. R. Civ. P. 33(b)(4), "[a]ny ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Defendant is ordered to fully answer the interrogatories to the extent it failed to do so because of its objections. See

Shomide v. ILC Dover, Inc., 521 F. Supp.2d 324, 331  (D. Del. 2007).

Interrogatory No. 1

Plaintiff asks for each of the agents who handled the claims along with the approximate dates of handling.  Plaintiff believes Defendant's response is incomplete in that it fails to provide the dates during which each of the three individuals handled Plaintiff's claim.  The Court agrees because Defendant's first response included the names of the claims representatives, but failed to include the dates on which the three individuals handled the claims.  Defendant contends that the dates are set forth in the computer log produced on December 13, 2008.

Federal Rule of Civil Procedure 33(d) permits a party to answer an interrogatory by reference to documents in certain circumstances.  The Rule provides that

> If the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summzrizing a party's business records (including electronically stored information), and if the burden deriving or ascertaining the answer will be substantially the same for either party, the responding party must answer by: (1) specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could; and (2) giving the interrogating party a reasonable opportunity to examine and audit the records and to make copies, compilations, abstracts, or summaries.

Fed. R. Civ. P. 33(d).  An interrogatory answer merely referencing documents is appropriate for "requests requiring compilation or analysis, accomplished as easily by one party as another, or where neither side has clear superiority of knowledge or familiarity with the documents."  United Oil Co. v. Parts Assocs., Inc., 227 F.R.D. 404, 419 (D. Md. 2005); see also United States v. Rachel, 289 F. Supp. 2d 688, 693 (D. Md. 2003) (finding answers referencing documents appropriate where the "interrogatories were extremely broadly worded") .  It is inappropriate where the interrogatory calls for "the exercise of particular knowledge and judgment on the part

of the responding party." <u>United Oil Co.</u>, 227 F.R.D. at 419. In that case, the served party must fully answer the interrogatory. <u>Id.</u> at 420. Defendant is "entitled to know the factual content of plaintiff's claims with a reasonable degree of precision." <u>Martin v. Easton Publ'g. Co.</u>, 85 F.R.D. 312, 315 (E.D. Pa. 1980).

Where a party validly chooses to respond by referencing records, he may not simply state that he has already produced the information. <u>Herdlein Tech., Inc. v. Century Contractors, Inc.</u>, 147 F.R.D. 103, 105 (W.D.N.C. 1993). Rather, he must "specifically identify the documents from which the responding party may derive an answer." <u>Id.</u>; Fed. R. Civ. P. 33(d). With these considerations in mind, the Court notes that it made an error at the hearing. The Court still finds that Defendant's response was inadequate. However, the defendant may, in fact, respond by specifically referencing the document(s), including page numbers or any other method by which the Plaintiff can easily identify the information sought. Defendant has eleven (11) days from the date of this Order to respond accordingly.

Interrogatory No. 2

Plaintiff asks for the total dollar amount of premiums paid by Plaintiff during her history of being insured under the policy at issue in this action. Defendant did not respond to the Interrogatory and in its Response to Plaintiff's Motion to Compel claims it produced the entire history of billing statements. Defendant acknowledges it did not do the math sufficient to respond to the Interrogatory.

This is not a situation, such as the one outlined in Interrogatory No. 1 above, where Defendant can force Plaintiff to "find a needle in a haystack." Defendant is in a much better position to compile the information necessary to respond to this Interrogatory than Plaintiff.

Therefore, Defendant is ordered to respond to this Interrogatory by setting forth the total dollar amount of premiums paid by Plaintiff during her history as insured under the policy at issue in this action within eleven (11) days of the date of this Order.

Interrogatory No. 3

Plaintiff asks for each civil action filed and/or each informal grievance lodged with Defendant since 1997. Defendant objected generally on the grounds that this Interrogatory is overly broad and unduly burdensome as to both time and scope. In its Response to Plaintiff's Motion to Compel, Defendant reiterated that no formal tracking system exists fo document all civil actions, formal and informal grievances and the like.

As previously discussed, general objections are not allowed under the Federal Rules of Civil Procedure. The Court nevertheless agrees with Defendant's objection as to time. Consistent with the Court's discussion above regarding Plaintiff's Request for Production of Documents Nos. 9-11, the Court orders Defendant to respond to this Interrogatory by providing all civil actions and/or informal grievances lodged with Defendant from 2003 to the present. If no civil actions and/or informal grievances have been lodged during this time, Defendant is ordered to respond as such in writing within eleven (11) days of the date of this Order.

Interrogatory No. 4

Plaintiff asks Defendant to set forth, for each affirmative defense in the pleading which is responsive to the Complaint, the factual basis of said allegations and to identify each witness and what Defendant believes to be their expected testimony. Defendant, in its initial response, provided a narrative for each affirmative defense, but did not identify a single witness or fact.

At the hearing, counsel for Defendant explained that he does not know at this time who

he will be calling as witnesses in this case.  As was previously discussed above regarding Plaintiff's Request for Production No. 15, in accordance with Rule 26(a)(3), Defendant is ordered to identify the witnesses who have knowledge of each affirmative defense and what knowledge each has.  Defendant need not disclose who, if any, it intends to call at trial at this time.  However, it must tell who has knowledge of each affirmative defense within eleven (11) days of the date of this Order.

Interrogatory No. 5

Plaintiff asks Defendant to describe why any documents, tapes, etc. requested have been destroyed, altered, retyped, redrafted or modified before being photocopied and produced. Defendant's initial response was that no documents have been destroyed and any alterations and/or deletions were done to protect privileged information.  In its Response to Plaintiff's Motion to Compel, it clarifies by saying that the alterations/deletions they were referencing were to the two "privileged" pages discussed above.

If Defendant's representations to the Court are true, Defendant is ordered to respond to Interrogatory No. 5 by providing, in writing and under oath, that no documents have been destroyed and only the two documents submitted to the Court for in camera review have been altered.  Defendant is further ordered to explain, with specificity, why those documents have been altered.  Defendant has eleven (11) days from the date of this Order to respond.

Interrogatory No. 6

Plaintiff asks Defendant to identify each corporate entity with which it has been affiliated with from 1998 to the present and to describe the nature of the affiliation and the date each affiliation legally commenced and ended.  Defendant initially objected generally, but responded

25

that it is affiliated with potentially hundreds of entities. In its Response to Plaintiff's Motion to

Compel, Defendant avers it has produced documents relevant to Motorists Mutual Insurance

Company, American Hardware Mutual Insurance Company, and MICO Insurance Company.

Again the Court notes that general objections are not allowed under the Federal Rules.

However, the Court agrees that this Interrogatory is overly broad, but only as to time. Black's

Law Dictionary defines "affiliate company" as a "[c]ompany effectively controlled by another

company. A branch, division, or subsidiary." Black's Law Dictionary 58 (6th ed. 1990).

Corporations which are related as parent and subsidiary are characterized by identity of

ownership of capital stock. See Northestern Consol. Co. C. v. U.S., 406 F.2d 76, 79 (C.A. Ill.

1969).

Defendant is ordered to identify each of its affiliate companies from 2003 to the present

and the date each affiliation legally commenced and ended within eleven (11) days of the date of

this Order.

<u>Interrogatory No. 7</u>

Plaintiff asks for a description of each credible defense to liability in the underlying

motor vehicle accident, the identity of each person who discovered each defense and the date on

which each discovery was made. Defendant responded by directing Plaintiff to its response to

Request for Production No. 19. In its response to Request for Production No. 19, Defendant

produced the claim file and specifically referenced the police report. At the hearing, Defendant

claims that what is being sought is work-product. Defendant relayed to the Court that he

claimed that the theories regarding liability in the underlying motor vehicle accident were work

product in his responses. However, the Court does not see where Defendant made this claim in

either its initial responses to Plaintiff's Discovery Requests or Plaintiff's Motion to Compel.

"The work product doctrine is an independent source of immunity from discovery, separate and distinct from the attorney-client privilege." In re Grand Jury, 106 F.R.D. 255, 257 (D.N.R. 1985). It is "broader than the attorney-client privilege; it protects materials prepared by the attorney, whether or not disclosed to the client, and it protects material prepared by agents for the attorney." In re Grand Jury Proceedings, 601 F.2d 162, 171 (5th Cir. 1979). The work-product doctrine "protects the work of the attorney done in preparation for litigation..." In re Grand Jury Proceedings, 33 F.3d 342, 348 (4th Cir. 1994).

As the Supreme Court observed in Hickman v. Taylor, 329 U.S. 495, 510-11 (1947), the work-product doctrine is critical to a lawyer's ability to render professional services to his client: "it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference.... This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways...." "Were such materials open to opposing counsel on mere demand, much of what is now put down in writing would remain unwritten. An attorney's thoughts, heretofore inviolate, would not be his own. Inefficiency, unfairness and sharp practices would inevitably develop in the giving of legal advice and in the preparation of cases for trial. The effect on the legal profession would be demoralizing. And the interests of the clients and the cause of justice would be poorly served."

Although "factual" work-product may be discoverable upon a showing of substantial

27

need for the information sought, the protection afforded to "opinion" work-product -- which reflects counsel's subjective beliefs, impressions, and strategies regarding a case -- is nearly absolute.  As the D.C. Circuit explained in In re Sealed Case, 676 F.2d 793, 809-10 (D.C. Cir. 1982), "to the extent that work product reveals the opinions, judgments, and thought processes of counsel, it receives some higher level of protection, and a party seeking discovery must show extraordinary justification."  See also Upjohn Co. v. U.S., 449 U.S. 383, 401 (1981) (opinion work product "cannot be disclosed simply on a showing of substantial need and inability to obtain the equivalent without undue hardship").

The Court finds that the information sought by this Interrogatory is protected by the work-product doctrine.  However, the Court searched the various pleadings and briefs in this case and was unable to find where Defendant responded in writing that the information sought was protected by the work-product doctrine.  Defendant is therefore ordered to respond, in writing, within eleven (11) days of the date of this Order.

D.      Decision

Plaintiff's Motion to Compel is **GRANTED IN PART AND DENIED IN PART**.  More specifically, Plaintiff's Motion is **GRANTED** as to Request for Production of Documents Nos. 1, 2, 3, 4, 9, 10, 11, 12, 13, 14, 15, 17 and 19 and Interrogatory Nos. 1, 2, 3, 4, 5 and 6. Plaintiff's Motion is **DENIED** as to Interrogatory No. 7.  Defendant is ordered to amend and expand upon its answers consistent with the Memorandum and Opinion outlined above. Furthermore, it is expressly ordered that Defendant have its responses verified in compliance with Fed. R. Civ. P. 33(b).  Defendant shall have eleven (11) days from the date of this Order to file its amended responses.

Plaintiff's counsel shall file an affidavit of reasonable expenses incurred in filing and arguing this motion within fourteen (14) days of the date of this Order. Defendant shall file any response to Plaintiff's affidavit within twenty-eight (28) days of the date of this Order.

Defendant and its counsel shall be given an opportunity to be heard on reasonable expenses at 10 a.m., Tuesday, March 3, 2009 in the Magistrate Judge Courtroom, Room 433, Fourth Floor, United States Courthouse, Twelfth and Chapline Streets, Wheeling, West Virginia.


Filing of objections does not stay this Order. Any party may, within ten (10) days after being served with a copy of this Order, file with the Clerk of the Court written objections identifying the portions of the Order to which objection is made, and the basis for such objection. A copy of such objections should also be submitted to District Court Judge of Record. Failure to timely file objections to the Order set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Order.

The Clerk of the Court is directed to transmit a copy of this Order to parties who appear *pro se* and any counsel of record, as applicable.

DATED: January 23, 2009

/s/ James E. Seibert
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE